# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Jack Wolf, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1385-GMS |
| | ) | |
| Thomas Carroll, DCC Medical Dept., C/O Pusey, | ) | |
| C/O Carter, and Lt. Seacord, | ) | |
| | ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN <u>SUPPORT OF THEIR MOTION TO DISMISS</u>

## <u>MEMORANDUM OF LAW</u>

**Statement of Facts**

Jack Wolf (hereinafter "Plaintiff") is an inmate under the supervision of the Delaware Department of Correction (hereinafter "DOC"). He is currently housed at the Delaware Correction Center in Smyrna, Delaware (hereinafter "DCC"). On October 25, 2004, Plaintiff filed a complaint against the medical staff at DCC, along with the Warden, a Lieutenant and two correction officers. (*Complaint*, D.I.2). Plaintiff alleges that the medical staff denied him medical treatment for injuries he sustained to his back and hand. Additionally, he alleges that he suffers a golf-ball size tumor on his left testicle which is not being medically treated. Id. Also, he claims that Correction Officers Pusey[1] and Carter slammed him on top of a laundry cart worsening his back injury. (*Complaint*, D.I.2). Plaintiff later adds a claim asserting that Lieutenant Seacord assaulted him by

---

[1] Correction Officer Pusey was substituted for Correction Officer Wheeler, originally named in Mr. Wolf's complaint.

slamming him up and down in a chair, and slapping him in the head. (Amended Complaint, D.I.8). Plaintiff claims that he was placed in isolation for 19 days without medication for the pain. Id. Plaintiff attaches several documents, including grievance reports, forms and health care services fee sheets ranging in dates from 2000 through 2004, in an effort to support his claims. Given the most liberal reading construing Plaintiff's complaint in the light most favorable to him, State Defendants believe that Plaintiff asserts claims pursuant to 42 U.S.C. §1983 for alleged violations of his rights under the Eighth Amendment as a result of the correctional officers' alleged use of excessive force, and their indifference to his safety and serious medical needs. (D.I. 2).

**A.     <u>Standard of Review</u>**

Pursuant to Federal Rule of Civil Procedure 12(b) (6), the court may, upon a party's motion, dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). When reviewing a Rule 12(b)(6) motion, the court must accept as true all factual allegations contained in the complaint as well as all reasonable inferences that may be drawn from those allegations, and view them in the light most favorable to the nonmoving party. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) ("A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."). The Third Circuit dismissal standard under rule12(b)(6) as to "specific allegations of unconstitutional conduct" requires a showing "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, " *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957).  Hence, in accordance with this dismissal standard, the movants will

prevail on their motion only if the plaintiff cannot demonstrate any set of facts that would

entitle him to relief. *Conley v. Gibson*, 355 U.S. at 46.          However in cases such as

the instant complaint by a pro se prisoner the court ought to construe the complaint

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d

83, 86 n.6 (3d Cir. 1997); *Urrutia v. Harrisburg County Police Dep't*., 91 F.3d 451, 456

(3d Cir. 1996). In so doing, the moving party has the burden of persuasion.  *See Kehr*

*Packages, Inc., v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).  Nonetheless, when

plaintiff is alleging civil rights violations which contain only vague conclusions wholly

unsupported by facts with no specific allegations of unconstitutional conduct, dismissal

pursuant to Rule 12 (b) (6) for failure to state a claim upon which relief can be granted is

appropriate.

**B.**    **Statements of Legal Arguments**

**I.**    **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
      EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO 42 U.S.C.
      §1997e.**

        1.        Plaintiff complains of inadequate medical treatment, and alleged excessive

force used by correctional officers. Specifically, Plaintiff claims that he suffers "back

pain and shoulder pain and pain from a tumer (sic)" for which he is not being treated.

(Complaint, D.I. 2). In support of his claim for inadequate medical care, Plaintiff attaches

a grievance report which describes an incident date of June 8, 2004. (See Grievance

Report 4808 attached as Pltf's Exhibit "A", D.I. 2). Therein, he reports that he was hit in

the hand with a basketball thrown by another prisoner. After being hit, Plaintiff visited

the infirmary where he states he remained for three (3) days for treatment of a broken

finger. Id.  A review of attachments to Plaintiff's complaint shows that he received an x-

ray of his hand and was given Motrin, an analgesic to relieve pain. <u>Id.</u> He claims, however, after a week, the medical staff stopped giving him Motrin, and charged him four ($4.00) dollars for an x-ray that he alleges was never taken. <u>Id.</u> Plaintiff took no further action on this grievance.

2.    In addition, Plaintiff attaches grievance report 6061, dated August 14, 2004, wherein he reiterates his finger injury, and that an x-ray was scheduled. (<u>See Grievance Report 6061 attached as Pltf's Exhibit "A", D.I. 2</u>). However, he claims that after remaining in the infirmary for three (3) days, he was then transferred to the MHU. <u>Id.</u> Plaintiff states on July 24, 2004, while in MHU, he injured his back. <u>Id.</u> Plaintiff's complaint, as well as grievance 6061 is silent as to the cause of the back injury in July 2004. Plaintiff reports that when he "walked to the doorway of the block and sat down" because he could not walk anymore, "the guards started yelling at me, two of them jerked me to my feet and pushed me, hurting me worse." <u>Id.</u> He then alleges, "I was attacked by three (3) guards and hurt worse. I know their names. I was then put in the SHU for fifteen days with no medication or treatment." <u>Id.</u> Plaintiff's relief requested that he be in the hospital and given a wheelchair. <u>Id.</u> This medical grievance form does not specify the names of the officers or how they attacked him. (<u>See Report 6061 as Pltf's Exhibit "A"</u>). Also attached to Plaintiff's complaint is medical grievance form 585 dated December 18, 2002, wherein he describes back pain, damaged rotor (sic) cup in right shoulder, and tumer (sic). (<u>See Grievance Report received Dec. 20, 2002 attached as Pltf's Exhibit "A", D.I. 2</u>). The medical problems Plaintiff alleged in 2002 as reasons to receive a bottom bunk and individual sink and toilet are the identical demands he makes in this present action.

3.      Pursuant to the Prisoner Litigation Reform Act (PLRA), Plaintiff must exhaust all available administrative remedial processes before resorting to filing a lawsuit in federal court. 42 U.S.C. § 1997e(a); *See Booth v. Churner*, 206 F.3d 289, 298 (3rd Cir. 2000), *aff'd*, 531 U.S. 956, 121 (2001)(exhaustion is a mandatory precondition to bringing suit on federal claims requiring dismissal if that has not occurred before filing).

4.      The exhaustion requirements set forth in §1997e (a) state, in pertinent part:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted.

42 U.S.C. § 1997e (a).

5.      The Third Circuit's decision in *Nyhuis v. Reno*, 204 F. 3d 65, 67 (3d Cir. 2000), consistent with *Booth's* rationale, rejected the argument that failure to exhaust administrative process is not mandated by §1997e (a), which only requires the exhaustion of administrative remedies "as are available".  The *Nyhuis* court  held that "the PLRA amended 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory - whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action." *Id.* at 67.  Plaintiff must exhaust the administrative remedies available to him prior to filing a §1983 action.

6.      The PLRA § 1997e exhaustion requirements are twofold. First, a prisoner complaint must pertain to conditions of his or her confinement. The Third Circuit Court of Appeals, interpreting prison conditions as defined in 18 U.S.C. § 3626(g) (2), refers "to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." *Booth*, 206 F.3d at 294. Plaintiff has been incarcerated at the Delaware Correctional Center since the conditions complained of

arose.

7.      Secondly, an administrative procedure to remedy prisoner complaints is necessary to promote judicial efficiency.  *See Jenkins v. Morton,* 148 F.3d 257, 259 (3d Cir. 1998)(agency has the opportunity to correct its own errors, thus mooting a judicial controversy, avoiding piecemeal appeals, or producing a record for judicial deliberation in a complex or technical factual context).

8.      The State of Delaware Bureau of Prisons has established an Inmate Grievance Procedure whereby "every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed."  See State of Delaware Bureau of Prisons Procedure Manual, Procedure Number 4.4, section II (revised May 15, 1998) attached hereto as Exhibit "1". The procedure establishes a three-step grievance process with two levels of appeal. Id. at § V. In order to exhaust all available administrative remedies, a prisoner must complete all stages of review and participate in the appeals process. Therefore the provisions of § 1997 (e) are applicable to him.

9.      The DCC maintains an inmate grievance process which permits prisoners to seek review of the problems they experience during their incarcerated time. This process is designed to provide review and resolution of prisoner grievances. The inmate grievance procedures are made available to every prisoner in the Departments custody. The inmates are required to file formal grievances and appeals to the Inmate Grievance Chair ("IGC") in addition to informal grievances in order to fully exhaust their administrative remedies.[2] After a written grievance is submitted to the IGC, [3]

---

[2]"All inmates, regardless of physical condition/security status/administrative

investigation into the matter will be initiated and informal resolution attempted.  If informal resolution is unsuccessful, the inmate grievance resolution committee ("RGC")[4] will convene and a hearing will be held, culminating in a recommendation which is forwarded to the Warden or his designee ("Warden").  If the Warden and the grievant concur with the RGC recommendation, the IGC closes the file and monitors issues of compliance.  If the parties do not concur, the matter is referred to the Bureau Grievance Officer ("BGO"), who reviews the file.  If the BGO concurs with the Warden's decision and the Bureau Chief of Prisons accepts the BGO recommendation, the IGC closes the file and monitors compliance.  Alternatively, the BGO can attempt mediation between the grievant and the Warden or recommend outside review of the matter. See Exhibit "1".

10.     The BOP procedure for inmate grievances also provides for emergency grievances and medical grievances. BOP 4.4 outlines the process each of these types of inmate grievances provide. Id. at IGP Resolution Levels.

11.     Although Plaintiff acknowledged that the prisoner grievance procedure is available to him at DCC, he clearly failed to present the facts relating to his complaint in that procedure. (D.I.2, part II B.). It is incontrovertible that Plaintiff never grieved the conditions of confinement concerning the use of force. Albeit Plaintiff filed an inmate grievance form wherein he made a generalized claim that "three guards" attacked him, at no time prior to filing this lawsuit, did he provide a particularized statement necessary for

status, shall be entitled to use the IGP." BOP 4.4 Section V.

3 The grievance process begins when an inmate files a Form #584 which must be completed within 7 calendar days following the incident and forwarded to the IGC.

[4]The RGC is a committee comprised of institutional security staff, treatment staff, and inmate representatives that hears inmate grievances and makes a recommendation to the Warden/Warden's designee.

an investigation to be conducted or seek any administrative remedy related to such claims. (See Report 6061 as Pltf's Ex. "A"). Moreover, in response to the question on the printed federal complaint form concerning the steps taken to complain to the prison authorities, Plaintiff specifically indicates he complained of chronic back and shoulder pains for which he was provided x-rays and Motrin. (D.I.2). Plaintiff makes no mention that he filed a grievance complaining of the force used by prison officers. Plaintiff's grievances through the stages of the process focused on medical issues, rather than on any issues related to the alleged assault by correctional officers. (D.I.2).

12.     Without a doubt, Plaintiff has failed to exhaust available administrative remedies before filing this civil rights action alleging excessive force. Clearly, it is only after failing to pursue administrative remedies pursuant to the PLRA that he identified Pusey, Carter and Seacord as the officers in his federal court action. (D.I.8). Upon review of Plaintiff's record evidence the alleged injury to his back occurred when he fell from his bunk at least on different occasions. (D.I.2 and 8). Although Plaintiff does not specify the exact times for these occurrences, it becomes clear from his pleadings, these incidents occurred long before October 25, 2004 when he filed this complaint. (D.I. 2).

13.     The grievances above-referenced indicate that Plaintiff was evaluated on October 27, 2003 for back pain. Id. Moreover, according to grievance report 7001, filed on September 13, 2004, Plaintiff, once again, filed a medical grievance seeking x-rays for his back and hand. (See Grievance Report 7001 attached hereto as Exhibit "2").  In fact, the Medical Grievance Committee ("MGC") investigated Plaintiff's claims and scheduled him to see Dr. Rogers. The investigation also revealed that x-rays were completed, and which showed no evidence of fracture, dislocation or abnormality. Id. A

Medical Grievance Committee hearing concluded that the x-rays were normal and no other issues needed to be addressed. Id. Plaintiff did not take any further appeal of the MGC decision. Id.

14. In all, no grievances have been filed with the grievance committees, security or otherwise, which seek redress for alleged excessive force by officers or any attendant injuries that occurred as a result of their conduct. Plaintiff fails to demonstrate that he exhausted his claims against officers Carter, Pusey and Seacord as contained in the Complaint. Plaintiff's reliance on conclusory allegations and vague statements offer no proof that he is entitled to the relief he is requesting. Therefore, Plaintiff's complaint must be dismissed.

15. In the instant case, Plaintiff cannot show that he exhausted available administrative remedies with regard to his allegations of cruel and unusual punishment. The Plaintiff did not file, as required at the institutional level, a grievance which identified prison officers and described how they applied force "maliciously and sadistically for the very purpose of causing harm" as he now complains. Clearly, Plaintiff cannot offer genuine evidence to demonstrate that he exhausted available remedies prior to filing this action. It is therefore "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.

## II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b) (6).

16. In accordance with the United States Supreme Court in *Haines v. Kerner*, 404 U.S. 519 (1972), the Third Circuit Court of Appeals has set forth the

dismissal standard under Fed. R. Civ. P. 12(b) (6) as to "specific allegations of unconstitutional conduct" which requires a showing "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. at 45-46.  However, the instant Complaint "contains only vague and conclusory allegations, with no specific allegations of unconstitutional conduct.   In such cases, "dismissal of a complaint by a state prisoner in a civil rights case where the allegations are broad and conclusory, and unsupported by factual allegations is appropriate.  *Negrich v. Hohn*, 379 F. 2d 213, 215 (3d Cir. 1957).   The pleadings contain only vague and conclusory allegations, therefore dismissal pursuant to Fed. R. Civ. P. 12 (b) (6) for failure to state a claim upon which relief can be granted is appropriate.

### Plaintiff Does Not State An Eighth Amendment Inadequate Medical Treatment Claim

17.    Plaintiff's Section 1983 claim against State Defendants is based upon the Eighth Amendment, under which the states have a duty to provide "adequate medical care to those it is punishing by incarceration."  *West v. Keve*, 571 F.2d 158, 161 (3d. Cir. 1978).  The Supreme Court has held that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency'." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  *Accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).  In order to satisfy the "deliberate indifference" aspect of the *Estelle* test, a plaintiff must allege either "reckless disregard" of or "actual intent" to disregard his medical condition. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).  Additionally, a plaintiff must allege that his medical need is

"serious".  *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987), *cert. denied* 485 U.S. 991 (1988).  In order to show "deliberate indifference," a plaintiff must show that a prison official consciously disregarded a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S.825, 837 (1994). A prison official's denial of an inmate's reasonable request for medical care constitutes deliberate indifference if the denial of the request causes the inmate to experience undue suffering or the threat of tangible residual injury. *Williams v. First Correctional Medical*, 377 F. Supp.2d 473, 476 (D. Del. 2005). Additionally, deliberate indifference may be found if "necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical." *Id. See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979). Therefore, a prison official is deliberately indifferent only where he or she has the required mental state. *Williams*, 377 F.Supp.2d at 476.  In actual fact, a prison official can be held liable only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837. Mere allegations of negligence do not meet the pleading requirements for deliberate indifference. *Estelle*, 429 U.S. at 105-106.

        18.    Plaintiff's claim that Defendants Carroll, Carter, Pusey or Seacord acted with actual or reckless disregard for his medical problems is not supported by the record. All evidence shows that Plaintiff's requests for medical care were submitted to the medical providers, and he received ongoing medical treatment throughout his incarceration at the Delaware Correctional Center (DCC). (See Interdisciplinary Progress

Note attached as Exhibit "3"). The medical progress notes document Plaintiff's medical examination on July 28, 2004. Specifically, the notes reflect that the inmate walked to the medical room without any assistance. Id.  Additionally, the nurse indicates that he was "able to move all extremities freely and independently, [inmate] states he has a [history] of joint problems. Suggested [follow-up] with doctor. [Inmate] complaint of back pain and fever. Temperature 97.7 and medicate with Motrin 600 mg. Superficial abrasion noted to nose. [Inmate] tearful during evaluation. No further complaints voiced." (See Exhibit "3"). Plaintiff is complaining about the wisdom or quality of the medical treatment provided to him.  However, when some care has been provided, questions as to the adequacy or propriety of the care will not support an Eighth Amendment claim. *Durmer  v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants , however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to medical complaints of a prisoner who was already being treated by the prison doctor."); *Smullen v. Kearney*, 2003 WL 21383727, at *3 (D. Del. June 13, 2003) (Ex. 4). Courts will not second-guess a course of treatment, which presents a question of professional judgment. *Id. See also, Inmates of Allegheny County Jail v. Pierce*, 612 F.2d at 762. ("[C]ourts will 'disavow any attempts to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.'"). A mere difference of opinion as to care is not actionable under the Eighth Amendment.

19.     In *Miller v. Williams*, 2005 WL 1353336, at *4 (D. Del. June 7, 2005) (Ex. 5), plaintiff, a prisoner, alleged that he received improper and inadequate medical care for injuries he sustained in a slip and fall. The record evidenced that, over the course of

several months, medical personnel provided medical treatment on numerous occasions to plaintiff for his injuries. After an X-ray, he was diagnosed with back spasms and treated with medications and exercise. Miller disagreed with the measures taken during the course of his treatment and insisted that he should have undergone an MRI. *Id.* The court held that decisions as to appropriate testing and other measures were matters for medical judgment and did not amount to cruel and unusual punishment. *Id. See also Smullen v. Kearney*, 2003 WL 21383727, at *3 (plaintiff failed to show reckless disregard or actual intent where he was examined and treated on numerous occasions, including two hospitalizations with an outside provider).

20.   State Defendants' conduct during this time period does not implicate the deliberate indifference requisite for an Eighth Amendment claim.  Plaintiff fails to establish any evidence to support that Carroll, Carter, Pusey or Seacord knew or had reason to know that prison doctors or their assistants were mistreating or not treating Plaintiff.  *See  Slade v. Carroll*,  2004 WL 440381 at *2, Witham, J.  (Del. Super.)  (Ex. 6) ("Plaintiff has not established any personal involvement by Mr. Carroll.  Sick call request slips were submitted by the Plaintiff, but he has not established that Mr. Carroll demonstrated deliberate indifference to Plaintiff's medical needs  . . . Because Plaintiff has failed to establish personal involvement by Mr. Carroll and deliberate indifference on his part, Plaintiff's civil rights claim with respect to Mr. Carroll are [*sic*] dismissed . . . ."); *Coleman v. Ryan, et al.,* C.A. No. 00-895-RRM, McKelvie, J. (D.Del. May 31, 2001), *aff'd,*  No. 01-2829 ( 3d Cir. September 18, 2002) (*per curiam* order). Similarly, here there is no evidence produced by Plaintiff suggesting that Carroll, Carter, Pusey or Seacord knew or had the medical background to know that he faced a substantial risk of

13

serious harm and disregarded that risk.

21.    It is undisputed the State Defendants are not medically trained, nor are they responsible for the provision or quality of healthcare to inmates at the DCC.

22.    The grievance reports that Plaintiff attaches to his complaint demonstrate that he was being treated by the medical staff. There is no contrary evidence. For that reason, State Defendants are entitled to judgment as there is no evidence from which a reasonable jury could find that they had knowledge that Plaintiff was not being treated. As the Third Circuit has stated:

> Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.
> If a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibilities for various aspects of inmate life among, guards, administrators, physicians and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive **not** to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Spruill v. Gillis,* 372 F.3d 218, 236 (3d. Cir.  2004) (emphasis original).

24.    Given all the evidence, Plaintiff fails to show indifference which offends evolving standards of decency on the part of the prison officials. *Estelle v. Gamble*, 429 U.S. at 106 (the Court in *Estelle* determined that complaints of negligent diagnosis or treatment of a medical condition, for instance "a decision not to order an x-ray, or like measures," are "matter[s] for medical judgment, "and thus do not amount to cruel and unusual punishment under the Eighth Amendment.). Plaintiff's allegations are unsubstantiated and amount to nothing more than bald allegations concerning the overall

medical care he received.

**Excessive Force Claim**

25.     In Plaintiff's complaint he alleges that three (3) correctional officers assaulted him. (D.I. 2 and 8). Notwithstanding Plaintiff initially alleged that he was slammed on top of a laundry cart three times by officers Carter and Pusey, he later amends his complaint to state that officer Pusey, "the one that inflicted the most pain on me by slamming me on the laundry cart four (4) times and on the ground four (4) times told me his name was c/o Wheeler."(D.I. 8). Plaintiff does not state when this alleged assault occurred or does he describe where this assault occurred. Although Plaintiff claims that he was transferred to the SHU, it appears from Plaintiff's institutional records, he was classified to maximum security after failing to obey and order, and exhibiting disorderly and threatening behavior toward staff. (See Disciplinary Report #1011519 attached hereto as Exhibit "7"). In particular, on or about July 28, 2004, two correctional officers, not defendants herein, were required to place handcuffs on Plaintiff and escort him to the observation room when he refused a direct order to lock-in his cell. (See Exhibit "7"). An incident report was prepared by the officers, however, the report does not indicate or detail any occurrence of unnecessary force used against Plaintiff. Id. Lt. Seacord, the Staff Lieutenant on duty, was notified that the MHU was holding Plaintiff in the interview room after refusing to lock-in. (See Incident Report #1014148 attached hereto as Exhibit "8"). That report, too, details how Plaintiff, belligerent and hostile, was placed in the seat after lunging towards the lieutenant in an aggressive and threatening manner. Id. The report does not describe any unnecessary force used, but instead describes the minimal amount of force necessary to maintain order and discipline.

Importantly, correctional officer Pusey was not involved in the incident and his name does not appear on any reports related to the incident of July 28, 2004. Although Plaintiff attaches a picture from a newspaper clipping to his amended complaint, he offers no other detail to identify Officer Pusey as having any contact with him.

26.     The Supreme Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)). In the context of an excessive force claim, Plaintiff bears the burden to show that the prison official "used force 'with a knowing willingness that [harm] occur.'" *Farmer v. Brennan*, 511 U.S.825, 836 (1994). Plaintiff has offered no detail of an alleged altercation with correction officers and himself. He does not offer a time, date, or shift from which these events could have unfolded. He does not provide any factual information from which could be concluded that he was in fact assaulted by the named individuals. Moreover, Plaintiff's vague and conclusory statements are insufficient to support a claim that these defendants acted with malicious intent. Clearly, factors to be considered in deciding whether the use of force by correction officers violates the Eighth Amendment include the need for the application of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, the threat reasonably perceived by the responsible official, as well as the efforts made to temper the severity of a forceful response.  *Whitley v. Albers*, 475 U.S. at 320-321. Plaintiff cannot show that force applied by Defendants Carter or Seacord was not applied in a good faith effort to

maintain or restore discipline, or was applied maliciously and sadistically for the purpose of causing harm. It is undisputed that Plaintiff refused to lock-in his cell after given a direct order to do so. Also undisputed is Plaintiff's behavior on July 28, 2004 inside the observation room. Plaintiff verbally defied and physically resisted officers when encounter in the observation room. (See Exs. 7 & 8). Plaintiff's conduct created a need for Carter and Seacord to use force to control Plaintiff's disruptive behavior. *See Wilson v. Reinhart*, 2003 WL 21756393, at *4 (D. Del. July 29, 2003). Also, Plaintiff cannot show that he sustained any persistent or serious injury as a result of his contact with Carter or Seacord on July 28, 2004. (See Progress Notes at 3). Moreover, when Lieutenant Seacord perceived a threat to his safety or the security of the prison by Plaintiff's behavior, he necessarily placed Plaintiff back in his seat and handcuffed in the rear to avoid further problems. (See (See Incident Report #1014148 attached hereto as Exhibit "8"). Plaintiff had already refused opportunities offered by Seacord for him to calm down, as he continued to use profanity while he jumped up and lunged at Lieutenant Seacord. Id.  In this instant complaint, Plaintiff fails to set forth evidence that Carter, Pusey, or Seacord acted maliciously or sadistically for the very purpose to cause harm. Importantly, Plaintiff cannot prove that Correctional Officer Pusey had any involvement in the incident of July 28, 2004. Not only does Plaintiff fail to mention him in any grievances, but also, he cannot identify any incident or disciplinary reports that reference Pusey's involvement.

**Immunity from Suit**

27.    State defendants are immune from liability under the Eleventh Amendment.  The Eleventh Amendment bars suit against defendants in their official

capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)

("[I]n the absence of consent, a suit [in federal court] in which the State or one of its

agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment.").  The United States can waive the state's sovereign immunity, and

therefore, its Eleventh Amendment immunity through the Fourteenth Amendment,

however, only a clear indication of Congress' intent to waive the State's immunity will

produce this result.  *Id*.   No such clear intent can be seen in 42 U.S.C. §1983.   In fact,

Congress' intent appears to be to the contrary as to the statute facially allows suits to be

brought against "persons".  A suit against a State employee in official capacity is a suit

against the State.  *Hafer v. Melo*, 502 U.S. 211 (1991).  A State is not a "person" within

the meaning of the statute.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71

(1989).

28.     Furthermore, Defendants Carter and Seacord are entitled to qualified

immunity because they acted in good faith, without gross or wanton negligence, in their

performance of their discretionary duties. They are immune from liability for civil

damages, because the conduct did not violate "clearly established statutory or

constitutional rights of which a reasonable person would have known." *See Sharrar v.

Felsing*, 128 F.3d 810, 826 (3d Cir.1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)). More particularly, to be liable, the prison officials must have known that

handcuffing a belligerent and aggressive inmate to the rear was cruel and unusual

punishment. Plaintiff presented to the officers conduct which created a need for the

prison officials to use force to control his disruptive behavior. These officers perceived a

threat of danger to themselves and institutional security, and they responded

appropriately.

30.     To the extent that plaintiff claims a violation of the State Tort Claims Act, his complaint fails.  Clearly, Defendants acted without gross or wanton negligence; their actions arose out of, and in connection with, performance of official discretionary duties. 10 *Del. C*. §4001.

### No Supervisory Liability Imposed on Warden Carroll

31.     To the extent the plaintiff attempts to hold Defendant Warden Carroll liable based upon his supervisory position, liability may not be imposed vicariously against a supervisory official merely on the theory of *Respondeat Superior. Rizzo v. Goode*, 423 U.S. 362, 375 (1976); *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Heine v. Receiving Area Personnel*, 711 F. Supp. 178, 186-188 (D. Del. 1989). Personal involvement must be alleged and is only present where the supervisor directed the actions of his subordinates or actually knew of the actions and acquiesced in them. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff's complaint is silent as to Warden Carroll, and it makes no mention whatsoever that Warden Carroll had any personal involvement in the alleged constitutional violations.

WHEREFORE, based on the foregoing reasons, Plaintiff fails to state a claim upon which relief may be granted.  Accordingly, State defendants respectfully request that the Court dismiss plaintiff's complaint and grant the Defendants' motion to dismiss filed simultaneously with this memorandum of points and authorities.

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879

Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th floor
Wilmington, DE 19801
Date:   December 30, 2005          (302) 577-8400

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2005, I electronically filed *State Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss* with the Clerk of Court using CM/ECF which will send notification of such to the following: Kevin J. Connors, Esquire.  I hereby certify that on December 30, 2005, I have mailed by United States Postal Service, the document to the following non-registered participant: Jack Wolf.

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
ophelia.waters@state.de.us