IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JACK WILLIAM WOLF, | : |
| | : C.A. No. 04-1385-GMS |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : |
| THOMAS CARROLL, DCC | : |
| MEDICAL DEPARTMENT, C/O PUSEY, | : |
| C/O CARTER and LT. SEACORD, | : |
| | : |
| Defendants. | : |

**EXHIBITS A THROUGH B IN SUPPORT OF MEMORANDUM
OF POINTS AND AUTHORTIES IN SUPPORT OF THE MOTION OF
DEFENDANT, CORRECTIONAL MEDICAL SERVICES, INC., TO DISMISS
PLAINTIFF'S COMPLAINT**

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: /s/ Kevin J. Connors
Kevin J. Connors, Esquire #2135
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
Attorney for Defendant

DATED: May 3, 2006

EXHIBIT "A"

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| | RELATED ACA STANDARDS: 36 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: *[signature] Sal W. Howard* | | |
| EFFECTIVE DATE: Revised 5/15/98 | | |

I. AUTHORITY: DOC Policy 4.4

II. PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system. Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE: Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III. APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP; all inmates under BOP custody or supervision.

IV. DEFINITIONS:

A. Bureau Grievance Officer (BGO): A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B. Emergency Grievance: An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C. Grievance: A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 2 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

D. Inmate Grievance Chair (IGC): An institutional employee designated to handle inmate grievances.

E. Inmate Grievance Procedure (IGP): The formal process provided to inmates to resolve disputes.

F. Outside Reviewer: An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H. Resident Grievance Committee (RGC): A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I. Reprisal: Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J. Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

    Health Services Administrator
    Director of Nursing
    Charge Nurse
    Chief Medical Officer
    Medical Records Clerk
    Mental Health Counselor
    Chief Dental Officer
    Dental Assistant

V. PROCEDURE:

1. Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2. All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP. Inmate complaints regarding policies and conditions must be within DOC jurisdiction. This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally. NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | 4.4 | 5 OF 7 |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | 6 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

recommendation. Decisions by the Bureau Chief of Prisons a[re] final and not open to grievant interpretation. The Bureau [Chief] of Prisons will return his final decision and the grievance [back] to the IGC for closure and monitoring for issues of complianc[e.]

Emergency Grievance:

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by th[e] Warden/Warden's Designee. A copy of the grievance shall be sen[t] to the IGC upon receipt by the Warden/Warden's Designee. And th[e] Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will b[e] decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal. NOTE: If the Warden/Warden's Designee should determine that the grievance doe[s] not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

Medical Grievance:

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form. If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution. This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process. The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585. Upon receipt, the IGC forwards the file to the Bureau

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NOV 08 2000

| | |
|---|---|
| William E. O'Neil, | ) |
|   Plaintiff, | ) |
| v. | ) C.A. No. 99-849-SLR |
| Rick Kearney, Jean Snyder, Dr. Weiss, Karen Clark, | ) |
|   Defendants. | ) |

MEMORANDUM ORDER

I. INTRODUCTION

William E. O'Neil ("plaintiff") is a Delaware prison inmate incarcerated at Sussex Correctional Institution ("SCI") in Georgetown, Delaware. The defendants are the prison warden and three employees of Prison Health Services (collectively "defendants"). Plaintiff filed this action under 42 U.S.C. § 1983, asserting that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment for the defendants' failure to protect the plaintiff from an attack by another inmate. Plaintiff seeks compensatory and punitive damages. Procedurally, the court is faced with motions to dismiss from defendants.

II. FACTS

The basis for plaintiff's complaint is the placement of a violent inmate into his infirmary room on November 8, 1997. Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states that at 4:00 P.M. another inmate, Michael Hall, was brought into the room with plaintiff. Apparently, Hall had assaulted another inmate and was transferred to the infirmary for observation. Plaintiff alleges that Hall has had similar problems in the past as a result of his failure to take medication. The complaint maintains that defendant Karen Clark, a psychologist in the ward, was aware of Hall's problems and directed Hall to be placed in the room with plaintiff anyway. Plaintiff further maintains that Dr. Weiss, the mental health supervisor, had been treating Hall and ordered him to be observed prior to these assaults. At approximately 3:00 A.M., plaintiff was awakened by kicking and beating from Hall. As a result, plaintiff required ten stitches.

Plaintiff contends that defendants violated his Eighth Amendment rights by acting with reckless disregard for his safety when they placed a violent inmate in his room.

Defendants move to dismiss the complaint for plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).[1]

---

[1] Defendants also argue that plaintiff has failed to allege facts which would state a claim for a violation of the Eighth Amendment and that plaintiff's claim is barred by the applicable statute of limitations. However, because the case is being dismissed for plaintiff's failure to exhaust administrative remedies, no discussion of the merits of plaintiff's claim is warranted.

2

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that

> [N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71 (1996)). 18 U.S.C. § 2636(g) defines "prison conditions" as "...the effects of actions by government officials on the lives of persons confined in prison...." Actions under this clause relate to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291 (3rd. Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the defendants' actions fit under the purview of the statute. The placement of a violent prisoner in plaintiff's room is certainly an action that affected the environment in which he lived. Because the action complained of is a "prison condition," plaintiff is required to exhaust administrative remedies, if any exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2] (D.I. 2) In Booth, the court held that prisoners must exhaust administrative remedies available to them prior to filing a § 1983 action, whether or not the remedies provide the inmate-plaintiff with the relief desired. 206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3rd. Cir. 2000)). By applying § 1997e(a) without exception, the policies underlying the exhaustion requirements are promoted, that is, the agency involved is given the opportunity to discover and correct its own mistakes and also conserve judicial resources. Nyhuis, 204 F.3d at 75.

V.  CONCLUSION

Therefore, at Wilmington this 6th day of November, 2000,

IT IS ORDERED that the motions to dismiss filed on behalf of defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark are granted.

United States District Judge

---

[2] Presumably this statement evidences that plaintiff thought the grievance process was only for prisoner and institution matters.

4

## CERTIFICATION OF SERVICE

I hereby certify that I have served upon all persons listed below two true and correct copies of MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS, CMS (PROPERLY KNOWN AS "CORRECTIONAL MEDICAL SERVICES, INC."), JACKIE (PROPERLY KNOWN AS "JACQUELINE A. NIXON") AND BARBARA (PROPERLY KNOWN AS "BARBARA LEWALLEN"), TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P.12 (b)(6) in the above-captioned matter this date by regular mail.

Shalnessa E. Goode
Baylor Women's Correctional Institution
660 Baylor Blvd.
New Castle, DE 19720

Gregory E. Smith, Esq.
Department of Justice
State of Delaware
820 N. French Street, 6th Floor
Wilmington, DE 19801

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _____
Kevin J. Connors, Esquire  I.D. # 2135
1220 N. Market Street, Suite 202
P.O. Box 130
Wilmington, DE 19899-0130
(302) 552-4302
Attorneys for Defendants, CMS, (properly known as "Correctional Medical Services, Inc.") and Jackie (properly known as "Jacqueline A. Nixon") and Barbara (properly known as "Barbara LeWallen")

DATED: May 16, 2001